FILED

JAN 23 2014

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

POSTED ON WEBSITE

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
FRESNO DIVISION

| | |
|---|---|
| In re | Case No. 13-10603-B-7 |
| Omar Ali Enriguez, | |
| Debtor. | |
| | |
| Wencelao Heredia, | Adversary Proc. No. 13-1049 |
| Plaintiff, | DC No. DRJ-3 |
| v. | |
| Omar Ali Enriguez, | |
| Defendant. | |

**MEMORANDUM DECISION REGARDING
MOTION TO DISMISS SECOND AMENDED COMPLAINT**

David R. Jenkins, Esq., appeared on behalf of the debtor/defendant, Omar Ali Enriguez.

Gabriel J. Waddell, Esq., of the Law Offices of Peter L. Fear, appeared on behalf of the plaintiff, Wencelao Heredia.

Before the court is a motion (the "Motion"), filed by the debtor/defendant, Omar Ali Enriguez (the "Debtor"), to dismiss this adversary proceeding, which was filed to determine the dischargeability of a debt for personal injury owed to the plaintiff, Wencelao Heredia ("Heredia") . This adversary proceeding has already been dismissed twice based on insufficient factual allegations to support a claim for relief. The Debtor now requests that dismissal be with prejudice. For the reasons set forth below, the Motion will be granted.

1    For purposes of this motion, the court must accept as true the factual

2 allegations pled in the complaint, therefore no findings of fact are necessary

3 or appropriate.  The court has also taken judicial notice of matters in the

4 record that may be relevant to this decision.  This memorandum decision

5 contains the court's conclusions of law.  The court has jurisdiction over this

6 matter under 28 U.S.C. § 1334 and 11 U.S.C. § 523[1] and General Orders

7 182 and 330 of the U.S. District Court for the Eastern District of California.

8 This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

9 **Background.**

10    Heredia and the Debtor are neighbors in a semi-rural area of Fresno,[2]

11 and nothing has been pled in this adversary proceeding to suggest that they

12 did not enjoy an amicable relationship.  This adversary proceeding arises

13 from an incident that occurred on April 9, 2012.  While working in his yard,

14 Heredia was attacked by three pitbull dogs which had escaped from the

15 Debtor's yard.  The basic facts of the incident are undisputed.  In summary,

16 the dogs got out of an enclosed area behind the Debtor's house and crawled

17 under a poorly maintained chain link fence surrounding the Debtor's

18

19

20    [1]Unless otherwise indicated, all chapter, section and rule references are to
the Bankruptcy Code, 11 U.S.C. §§ 101-1330, and to the Federal Rules of
21 Bankruptcy Procedure, Rules 1001-9036, as enacted and promulgated *after*
October 17, 2005, the effective date of The Bankruptcy Abuse Prevention and
22 Consumer Protection Act of 2005, Pub. L. 109-8, Apr. 20, 2005, 119 Stat. 23.

23    [2]Attached to the Complaint as Exhibit 6 is a copy of a five-page report
prepared by the Fresno Animal Control officer who first investigated the incident
24 on April 9, 2012 (the "Animal Control Report").  Although the Animal Control
Report by itself would be inadmissible hearsay, Heredia has offered it into
25 evidence to help establish the background facts and the Debtor's state of mind.
The Animal Control Report reveals that the area where the parties live is sparsely
26 populated.  The Debtor's house sits on a one-acre parcel surrounded by a chain
link fence.  Heredia's house is separated from the Debtor's house by a pasture and
27 a road that leads to the property behind the houses.  The Complaint at paragraph
28 11 suggests that the area is suitable for boarding horses.

2

1   property.  The dogs then crawled under another fence to enter Heredia's

2   back yard where he has working in the garden.  The dogs attacked and

3   Heredia was severely injured.  When the Debtor first heard the commotion,

4   he tried unsuccessfully to prevent the dogs from entering Heredia's yard.

5   After the attack, the Debtor drove Heredia to the hospital for treatment.

6   The dogs were later euthanized by the Fresno County Animal Control.

7   Heredia subsequently filed a civil suit for recovery of unspecified damages

8   against the Debtor in the Fresno County Superior Court (the "PI Claim").[3]

9        On January 30, 2013, the Debtor filed a petition under chapter 7.

10  The schedules list assets worth approximately $71,000, secured claims

11  totaling approximately $68,000 and unsecured claims, exclusive of

12  Heredia's PI Claim, of approximately $10,000.  The Debtor's schedule F

13  listed Heredia as an unsecured creditor holding a claim described as, "Civil

14  Suit," and valued at, "Unknown."  The Debtor's Statement of Financial

15  Affairs disclosed the PI Claim under "Suits and administrative

16  proceedings."

17       Heredia commenced this adversary proceeding on April 29, 2013,

18  seeking to except the PI Claim from the chapter 7 discharge pursuant to

19  § 523(a)(6) (willful and malicious injury).  The court granted the Debtor's

20  motion to dismiss the initial complaint based on the need for additional

21  facts to support the claim.  Heredia filed an amended complaint, which

22  drew from the Debtor another successful motion to dismiss for essentially

23  the same reason.  The court allowed Heredia to file a second amended

24  complaint (the "Complaint") to which this memorandum relates.

25

26
_____

27       [3]The Complaint requests a jury trial and an award of damages "to be
    determined at trial."  At oral argument, Heredia's counsel stated that Heredia had
28  incurred approximately $160,000 in medical bills.  He did not know what Heredia
    would request for pain and suffering.

3

1       The Debtor again moves to dismiss the Complaint under Federal

2  Rule of Civil Procedure 12(b)(6) (made applicable to this adversary

3  proceeding by Federal Rule of Bankruptcy Procedure 7012) and the

4  pleading standard established by the Supreme Court in *Bell Atl. Corp. v.*

5  *Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), and

6  subsequently in *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173

7  L.Ed.2d 868 (2009).  The Debtor contends that the Complaint does not

8  allege facts sufficient to lead the court to conclude that it is plausible that

9  the Debtor had either a "subjective intent to harm" Heredia or a "subjective

10  belief that harm was substantially certain."  *In re Su*, 290 F.3d 1140, 1143

11  (9th Cir.2002).[4]

12  **Factual Allegations.**

13       The Complaint pleads one claim for relief pursuant to § 523(a)(6).

14  The relevant facts as alleged in the complaint are summarized as follows:

15       1.   The Debtor owned three adult pitbull dogs which were kept
          on his property.

16

17       2.   In September 2011, a dog belonging to the Debtor's
          girlfriend, and kept at the same address, physically "bit" a
          third party resulting in a complaint to the Fresno Animal
18          Control department.  The dog was relinquished and
          euthanized after the incident.

19

20       3.   January 4, 2012, a resident of the neighborhood complained to
          Animal Control about two black and white pitbull dogs
          wandering loose in the area and "menacing neighbors."  The
21          neighbor reported to the Animal Control officer that "she was
          told by neighborhood kids" that the  dogs "had killed some
22          cats and chased a horse."  Animal Control investigated the
          incident, contacted the Debtor's brother at the property and
23          left a written warning for the Debtor.  The Animal Control
          Report stated "[t]here were no violations observed" with
24          regard to this prior incident.

25  / / /

26

27       [4]At oral argument, Heredia's counsel conceded that the Debtor did not
28  have a subjective intent to injure Heredia.  Based thereon, all of the discussion in
this memorandum will be focused on the "substantial certainty of harm' question.

4

4.    On March 29, 2012, a neighbor complained to Animal Control about three black and white pitbull dogs that "charged her, chasing her into her house." The dogs did not physically attack the neighbor. Animal Control issued a verbal and written warning to the Debtor.

5.    The Debtor's dogs were kept in an area surrounded by a chain link fence that was not properly maintained and inadequate to prevent them from leaving his property.

6.    On April 9, 2012, while Heredia was gardening in his backyard, the Debtor's dogs escaped from their enclosed yard and crawled under Heredia's fence where they physically attacked and severely injured him in the neck, ear, hand, thigh, left leg and ankle. Surgery was required to repair some of the damage and Heredia remains under a doctor's care.

**Issues Presented.**

Whether the Complaint pleads facts sufficient to support a "plausible" claim for relief under § 523(a)(6) and, if not, whether Heredia should be granted leave to amend the complaint a third time.

**Analysis and Conclusions of Law.**

Bankruptcy relief is afforded to the honest but unfortunate debtor. Exceptions from discharge are construed narrowly and generally represent social policy in the allocation of liability. For example, claims for injuries under certain specific conditions, such as those that result when a debtor is driving under the influence, are *per se* non dischargeable. § 523(a)(9). However, other exceptions to discharge are limited to circumstances where the debtor possesses some moral culpability and require some level of scienter.

**Willful and Malicious Injury.** Section 523(a)(6) excepts from discharge those debts which arise from willful and malicious injuries by the debtor to persons or property. The plaintiff bears the burden of proof, and the two elements, willfulness and malice, must be pled separately. *Albarran v. New Form. Inc.  (In re Barboza)*, 545 F.3d 702, 706 (9th Cir.2008).

As the Supreme Court explained the first element, in *Kawaauhau v. Geiger*, 523 U.S. 57, 61, 118 S.Ct. 974 (1998), "The word "willful" in (a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." This does not include injuries which are neither desired nor anticipated by the debtor. *Id*. The "willful injury requirement is met only when the debtor has a subjective motive to inflict injury or when the debtor believes that injury is substantially certain to result from his own conduct." *In re Ormsby*, 591 F.3d 1199, 1206 (C.A.9, 2010), citing *Carrillo v. Su (In re Su)*, 290 F.3d 1140, 1142 (9th Cir.2002).

In order to plead the "malice" element of § 523 (a)(6) claim, the plaintiff must include facts to show that it is plausible that plaintiff's injuries were the result of, "(1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done without just cause or excuse." *Id*. at 1207.

**Rule 12(b)(6) and the Twombly/Iqbal Pleading Standards.** The Ninth Circuit examined the relevant case law, in *Starr v. Baca*, 652 F.3d 1202, 1215 (9th Cir. 2011), and succinctly defined the federal pleading requirements under FRCP 12(b)(6) and *Twombly/Iqbal* as follows:

> [W]e can at least state the following two principles common to all of [the cases]. First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.

Here, the question before the court is whether the Complaint avers sufficient facts to show plausibly that Heredia's injury was "substantially certain to result" from the Debtor's conduct. (*See* footnote 4, *supra*.) In the

6

context of the Complaint, the Debtor's conduct was the failure to maintain a
safe and appropriate enclosure for his three pitbull dogs, even after the prior
"incidents" and the "warnings" he received from the Animal Control
Department.

Second, the Complaint must aver facts that plausibly show this
conduct was the result of malice.  While the Complaint addresses the
woeful condition of the dogs' enclosure at length, it does not offer any facts
upon which the court could conclude that these deficiencies were the result
of any malice toward Heredia.  Neither do the facts alleged suggest that the
Debtor believed with substantial certainty that Heredia, or anyone else,
would be injured as a result of his failure to maintain the dog's enclosure
and the fence around his yard.  The fact that the Debtor had recently
surrendered a different dog for euthanasia after a prior "incident" would
suggest that he did not believe the dogs were substantially certain to injure
anyone.  Why would the Debtor not be more diligent in maintaining his
fence if he was substantially certain the dogs would be euthanized as a
result?

In the case, *In re Jercich*, 238 F.3d 1202 (C.A.9,2001), the debtor
failed to pay wages that were due his employee.  The Ninth Circuit held the
employee's claim excepted from the debtor's discharge pursuant to
§ 523(a)(6) based on a showing that the debtor knew that he owed the
wages, it was a violation of state law not to pay the wages, economic injury
to the employee was substantially certain to occur if the wages were not
paid, and that the debtor had no excuse for not complying with the law.  The
court found that the debtor had the ability to pay the wages but simply chose
not to, spending the money instead on personal investments.  There was a
direct and immediate connection between the debtor's legal duty to pay
wages to his employee and the economic harm that resulted from debtor's

7

1    election not to do so.

2          Here, there is no such direct connection.  The dogs had allegedly

3    "chased" a neighbor and perhaps frightened some neighbors from time to

4    time, but they had never physically attacked anybody.  The dogs had to

5    crawl under two chain link fences to reach Heredia.  There is no allegation

6    that the dogs had ever previously entered someone else's back yard.

7          Two unpublished cases illustrate the distinction between when a

8    claim for personal injury caused by dogs, might and might not, be

9    dischargeable.  *Jones v. Holmes (In re Holmes)*, AP No. 11-00391, 2012

10   WL 2359909 (Bankr. N.D. Ala., June 21, 2012), the court ruled in favor of

11   the debtor.  The debtor operated a junkyard and his dogs had access,

12   through an open doorway, to the customer area of the shop where the

13   plaintiff was severely injured.  This was at least the third "attack" incident

14   by the same dogs under similar circumstances, however the court said the

15   debtor did not leave the door open with the intent to injure anyone, and that

16   leaving the door open was not substantially certain to result in the injury,

17   even though this had happened in the past.  "The dogs had on at least one

18   occasion run through the open door and attacked someone else, thus [the

19   debtor] should have been aware the dogs could possibly do the same again.

20   However, possibly and substantially certain are not the same."  *Id.* at *7.

21   The court pointed out that many customers had come into the shop between

22   the two incidents.  "[O]ne or two prior attacks does not equate to substantial

23   certainty that the dogs would attack any time the door was left open."

24   Distinguishing the case from the circumstances in *Zauper v. Lababit (In re*

25   *Lababit)*, AP No. 07-01227, 2009 WL 7751426 (9th Cir. BAP Oct. 8,

26   2009), the court said that reckless disregard or negligence did not satisfy

27   § 523(a)(6).

28   / / / .

1    In *Lababit*, evidence showed that the dog responsible for killing a cat

2    had previously been designated as a "potentially dangerous animal"

3    ("PDA") and as a consequence the dog's owner, the debtor, was legally

4    required to use extraordinary methods of control.  Failure to abide by these

5    requirements could result in criminal prosecution. Nevertheless, the debtor

6    consistently failed to adhere to these restrictions and, as a result, the

7    plaintiff's cat was killed.  In addition to its designation as a PDA, the dog

8    had been trained by the debtor to fight.  On appeal, the Bankruptcy

9    Appellate Panel affirmed the bankruptcy court's decision against the debtor.

10   It carefully considered all of the evidence before it and
     determined that the [debtors'] conduct of knowingly owning a
11   dog declared a PDA, a dog they trained to fight with a
     propensity for aggression and which had killed at least one
12   other cat, combined with their intentional and repeated breach
     of their duties to confine, muzzle, or leash [the dog], or post
13   warning signs, constituted a willful act or willful omission. To
     show their conduct was willful, [the plaintiff] need not prove
14   that the [debtors] intended to inflict injury on [the cat]; it was
     sufficient that they knew, based on [the dog's] history, that
15   injury to [the cat] was substantially certain to result if they
     failed to perform their duties.  The [debtors'] repeated
16   intentional failure to comply with their duties, which
     necessarily caused [the cat's] death, without just cause or
17   excuse, provides a sufficient basis for the bankruptcy court's
     determination that their conduct was also malicious.

18

19   *Id.* at *5, internal citations omitted.

20   The circumstances in the case at hand are more similar to those in

21   *Holmes*, and do not approach those in *Lababit*.  Although the Debtor had

22   previously been "warned" by Animal Control, after the "menacing" and

23   "chasing" incidents, the dogs had never been declared as dangerous, they

24   had not been trained to attack or fight, and the Debtor was not under any

25   statutory duty to keep them restrained.  Heredia argues, with reference to

26   the Animal Control Report (footnote 2, *supra*), that the dogs had been

27   known to "kill cats and chase a horse."  Putting aside for now the obvious

28   evidentiary problems with this statement, even if the Debtor knew of this,

9

1    the fact that the dogs may have scared a couple of neighbors, killed some

2    stray cats, and chased a horse in the semi-rural area where he lived, does not

3    necessarily make the dogs "vicious" or "potentially dangerous" and does

4    not necessarily put the Debtor on notice that somebody is substantially

5    certain to be seriously injured.

6       To survive this Motion, Heredia must plead a "plausible" (as

7    opposed to possible) showing that the Debtor knew with "substantial

8    certainty" that his dogs would physically attack and injure someone.  The

9    allegations in this Complaint fail to do so.

10    **Dismissal with Prejudice.**  Civil Rule 15(a)(2), incorporated by

11    FRBP 7015, permits amendment of the Complaint only with the Debtor's

12    consent or leave of the court.  Such leave to amend "should freely" be given

13    "when justice so requires."  *Id.*  However, "liberality in granting leave to

14    amend is subject to several limitations."  *Ascon Props., Inc. v. Mobil Oil*

15    *Co.,* 866 F.2d 1149, 1160 (9th Cir. 1987).  For example, where amendment

16    would cause the defendant undue prejudice, would be futile, or create undue

17    delay, leave need not be granted.  This is especially true where the

18    complaint has been previously amended.

19       The question here is whether Heredia should be given a further

20    opportunity to plead a claim that plausibly fits within the narrow boundaries

21    of § 523(a)(6).  The court has already dismissed this adversary proceeding

22    twice and instructed Heredia's counsel of the need for more facts.  At oral

23    / / /

24    / / /

25    / / /

26    / / /

27    / / /

28    / / /

1  argument, Heredia's counsel stated that he had already reviewed the facts

2  "with a fine-toothed comb" which suggests that there are no more relevant

3  facts to be pled.  Further amendment would prejudice the Debtor and cause

4  undue delay.  The Complaint will therefore be dismissed without leave to

5  amend.

6      Dated: January __23__, 2014

7

8                                  W. Richard Lee
                                   United States Bankruptcy Judge
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

11

1

2

3

4

### Instructions to Clerk of Court
#### Service List - Not Part of Order/Judgment

5

6    The Clerk of Court is instructed to send the Order/Judgment or other court generated document transmitted herewith to the parties below. The Clerk of Court will send the Order via the BNC or, if checked _____, via the U.S. mail.

7

8    Debtor(s), Attorney for the Debtor(s), Bankruptcy Trustee (if appointed in the case), and __X__ Other Persons Specified Below:

9

Gabriel J. Waddell, Esq.
10   Attorney at Law
7750 N. Fresno St., #101
11   Fresno, CA 93720

12   Christian J. Amendt, Esq.
Attorney at Law
13   363 S. Park Ave., #300
Pomona, CA 91766

14
David R. Jenkins, Esq.
15   Attorney at Law
P.O. Box 1406
16   Fresno, CA 93716

17   Office of the U.S. Trustee
U.S. Courthouse
18   2500 Tulare Street, Suite 1401
Fresno, CA 93721

19

20

21

22

23

24

25

26

27

28